## ATLANTA SUBURBAN LAND CORPORATION *v.* AUSTIN.

1. That the bill of exceptions fails to specify all the material parts of the record is not cause for dismissing the writ of error.
2. Relatively to the right to file exceptions pendente lite, a suit is pending during the interval from the rendition of the judgment to the filing of a motion for a new trial.
3. Refusal to strike the defendant's answer was not erroneous.
4. As the defendant's answer admitted that the plaintiff had a prima facie right to recover, the burden of proof and the right to open and conclude the argument were with the defendant.
5. The evidence objected to by the plaintiff, being, as alleged in the objection, irrelevant, should have been excluded.
6. The excerpt from the charge of the court to which exception was taken was not erroneous for the reason assigned.
7. Where a wife, desiring to obtain a loan on land the legal title to which was in her and her husband, obligated herself to pay the amount due on a judgment against him, to which his apparent interest in the land was subject, and thereby secured a release of such apparent incumbrance, such obligation, even though he had no real interest in the land, was not invalid on the ground that it was an undertaking by her to pay the debt of her husband; nor was it without consideration.

Argued February 14, — Decided March 7, 1905.

Action on bond.     Before Judge Roan.     DeKalb superior court. September 1, 1904.

On March 3, 1898, W. F. Stewart and Mary E. J. Stewart executed a deed conveying to H. C. Austin and Sallie E. Austin seventy-five acres, more or less, of the south portion of lot 184 in the 18th district of DeKalb county, this State, and more particularly described in the deed.  The Atlanta Suburban Land Corporation obtained a judgment against H. C. Austin, on February 28, 1899, for $184.90 principal, interest, and costs.     Sallie E. Austin, on December 23, 1899, executed to the Atlanta Suburban Land Corporation her obligation for the payment of $369.80, in which appears the following stipulation:   "The condition of the foregoing obligation is as follows:   Whereas there is a judgment of

record upon the execution docket of the superior court of DeKalb county in favor of Atlanta Suburban Land Corporation and against H. C. Austin, for the sum of $184.90, including principal, interest, and costs at the date of judgment, said date being February 28, 1899, and said execution being recorded on general execution docket No. 3, page 38, in the clerk's office of the superior court of said county of DeKalb, which is a lien on the undivided half interest of H. C. Austin in the following land, to wit: 75 acres, more or less, in land lot 184 in the 18th district of DeKalb County, Georgia, and commencing at the southwest corner of said lot, and running thence east 115 rods, thence north 119 rods, thence west 111 rods, thence south 113 rods, to the beginning point; and whereas said H. C. Austin is about to transfer by deed his one-half interest in said land to Mrs. Sallie E. Austin, who has negotiated with parties to make her a loan upon said land; and whereas said parties will not make said loan with said judgment and execution unsatisfied: Now, in consideration of said Atlanta Land Corporation releasing said above-described land from the lien of said judgment and execution, the said Mrs. Sallie E. Austin obligates herself to pay the costs in said case at once, and to pay all accrued interest within two months from this date, and to pay said judgment and fi. fa. in full within two years from this date. The said Mrs. Austin further obligates herself to pay said judgment and fi. fa. sooner, if she can sell certain other land which she is endeavoring to sell; that is, she will pay said debt whenever she makes said sale, although the two years above mentioned may not have expired. Should the said Mrs. Sallie E. Austin comply with all the obligations of this bond, then the same is to be void." On December 14, 1899, H. C. Austin executed a deed to Sallie E. Austin for an undivided half interest in the 75 acres of land conveyed to him and her by the Stewarts. Sallie E. Austin, on December 30, 1899, executed a deed to the 75 acres of land to F. L. Achey, to secure a loan. The judgment of the Atlanta Suburban Land Corporation not having been paid, it brought suit against Mrs. Austin upon the obligation above set forth. In her answer to this suit she admitted the execution of the obligation and that she had paid no part of the amounts due on the execution. She then set up her defense as follows: "That said H. C. Austin never at any time, previous to or since the

execution of the bond set out in [plaintiff's petition] owned any interest in, or had any title, legal or equitable, to said land. On the contrary, at the time said bond was executed, and before and since, the legal title and beneficial interest in said land were and have been in this defendant. . . For further answer in this behalf, this defendant says and avers that the said H. C. Austin mentioned in plaintiff's petition is the husband of this defendant, and was her husband at the time she executed the bond, copy of which is set out in Exhibit 'A' to said petition. She avers that the plaintiff parted with nothing, and she received no benefit by reason of the execution of said bond. Defendant further alleges that the said execution of said bond was an assumption by her of the debts of her said husband, and a promise and undertaking on her part to pay said debts; that such an assumption, promise, and undertaking are not binding upon her."

On the trial, plaintiff moved "to strike defendant's answer, upon the ground that it set forth no defense to plaintiff's suit." This motion was overruled, and the plaintiff excepted pendente lite. There was a verdict for the defendant, and the case was brought here upon the plaintiff's bill of exceptions assigning error on the overruling of its motion for a new trial and on its exceptions pendente lite.

*Green, Tilson & McKinney,* for plaintiff.
*J. D. Kilpatrick,* for defendant.

FISH, P. J. (After stating the facts.) 1. Upon the call of the case here the defendant in error moved to dismiss the writ of error, on the ground "that the bill of exceptions wholly fails to specify, as material to a clear understanding of the errors complained of, the following material parts of the record in said case, to wit:" The entries of filing of the original and amended motions for a new trial, the order setting the hearing of the motion for a new trial in vacation, the verification of the grounds of the original and amended motions for a new trial, the approval of the brief of evidence, the entry of filing of such brief, and the entry of filing of the exceptions pendente lite. The bill of exceptions does specify plaintiff's petition, the answer thereto, the verdict of the jury, the judgment thereon, the original and amended motions for a new trial, the brief of evidence, the judg-

ment overruling the motion for a new trial, the exceptions pendente lite and the date of the filing of the same. This ground of the motion to dismiss the writ of error is clearly without merit. Under the provisions of the act of 1892 (Civil Code, § 5536, par. 4, 5), it is the duty of this court to have the clerk of the lower court transmit a copy of any part of the record which appears to be necessary to a determination of the case, whether the same be specified or not in the bill of exceptions. Therefore, if this court should conclude that the parts of the record which the motion to dismiss alleges to be material to a clear understanding of the errors complained of are really so material, it would be bound, under this act, if such parts of the record were not duly before it, to have the clerk of the trial court transmit copies of the same to this court. As a matter of fact the parts of the record referred to in the motion to dismiss have been transmitted by the clerk of the court below, properly certified. Counsel for defendant in error relies, in support of the motion to dismiss, upon *Hardee* v. *Lovett*, 85 *Ga.* 620, *Alexander* v. *Williamson*, 86 *Ga.* 13, and *Pyne* v. *State*, 113 *Ga.* 725. The first two cases cited were decided prior to the act of 1892 and the act of 1893. The latter act provides: " It shall be unlawful for the Supreme Court of Georgia to dismiss any case for any want of technical conformity to the statutes or rules regulating the practice in carrying cases to that court, where there is enough in the bill of exceptions or transcript of the record presented, or both together, to enable the court to ascertain substantially the real questions in the case, which the parties seek to have decided therein." Civil Code, § 5569. In *Gregory* v. *Daniel*, 93 *Ga.* 795, it was held, that, in view of the provisions of the act of 1893, the writ of error would not be dismissed on the ground that " no parts of the record were specified in the bill of exceptions as being material to be brought up to the Supreme Court;" though the practice of not specifying such parts of the record was deprecated. This decision was approvingly cited in *Hawkins* v. *Americus*, 102 *Ga.* 790. The case of *Pyne* v. *State*, supra, in so far as it may be in conflict with the provisions of the acts of 1892 and 1893 and with the ruling in *Gregory* v. *Daniel*, is not authority. The present case does not fall within the rule announced in *McMullen* v. *Butler*, 117 *Ga.* 845, 848, that where there is nothing in the bill of exceptions

or the argument of counsel to indicate that there are material parts of the record in the trial court, copies of which have not been duly transmitted to this court, necessary to a clear understanding of the errors complained of, this court is not required to send a fishing order to the clerk of the court below for supposititious parts of the record which have not been specified and sent up to the Supreme Court. Here the motion to dismiss itself informs this court of the existence of the parts of the record, alleged to be material, and not specified in the bill of exceptions, and which have been transmitted by the clerk of the trial court.

2. Another ground of the motion to dismiss the writ of error was, that the verdict and judgment were rendered September 8, 1903, the original motion for a new trial was filed October 19, 1903, the exceptions pendente lite were filed October 5, 1903, "twenty-seven days after final verdict and judgment had been rendered in said cause, and fourteen days before a motion for new trial was filed, and while no cause was pending in the court below upon which to base exceptions pendente lite on account of interlocutory orders and rulings by the court made therein." This ground of the motion is likewise without merit. We know of no rule requiring a writ of error to be dismissed for failure to file exceptions pendente lite at a proper time. . Moreover this ground of the motion would not be good if directed merely against the exceptions pendente lite, instead of being urged solely as a ground for the dismissal of the whole case. It appears from the record that the ruling complained of in the exceptions pendente lite was made at the trial, on September 8, 1903, and that the exceptions pendente lite were certified on September 10, 1903 ; and therefore they were, of course, presented and certified within the time prescribed by law. Van Epps' Code Supp. § 6206. Even if the exceptions pendente lite were filed after the verdict was rendered and judgment entered up thereon and prior to the filing of the motion for a new trial, they should be considered as filed during the pendency of the suit, as the verdict and judgment were not, relatively to the right to file exceptions pendente lite, a final disposition of the cause until the time prescribed by law for setting them aside by motion for new trial or writ of error had expired. *Harris* v. *Gano*, 117 *Ga.* 934, and cases cited.

3. The court did not err in refusing to strike the answer of the

defendant, upon the general ground "that it set forth no defense to plaintiff's suit." The motion was to strike the entire answer. The answer expressly denied the paragraph of the petition alleging the various amounts for which the defendant was liable. It further averred that H. C. Austin never had any interest in the 75 acres of land; that the obligation sued on was wholly without consideration, and was an undertaking on the part of the defendant to assume and pay a debt of her husband. These general averments might have been so amended as to properly set up a valid defense. The plaintiff could not admit the truth of all of these general allegations and recover of the defendant; and we are therefore of opinion that the motion to strike the whole answer, which motion was in the nature of a general demurrer, was properly overruled.

4. Upon the trial the court, over the objection of the plaintiff, allowed the defendant to open and conclude the argument. This was proper, as the defendant in her answer admitted a prima facie case in favor of the plaintiff and assumed the burden of establishing her pleas.

5. Over the objection of the plaintiff, the court allowed the defendant to prove that, subsequently to the date of the obligation sued on, the execution of the plaintiff against H. C. Austin was levied upon certain land other than the 75 acres mentioned in the bond sued on, as the property of the defendant in execution. The objection to this evidence was that it was immaterial and irrelevant. We are clear that the objection was well taken and should have been sustained; as, in no view of the case, could the levy shed any light upon the questions at issue.

6. The court instructed the jury that the case turned solely upon the question whether or not Henry C. Austin, at the time Mrs. Austin executed the bond to the plaintiff, had any interest in the 75 acres of land described in that obligation; that if he had any interest therein, then the verdict should be for the plaintiff, otherwise it should be for the defendant. The error assigned upon this instruction, in the motion for a new trial, is: ". . . the case does not turn upon that question, but should be governed by the terms of the bond attached to the suit. The charge of the court renders the bond nugatory; whereas the court should have construed this bond for the jury, and have instructed them that

the defendant was bound by the recitals in said bond, and was estopped from denying them." We only deem it necessary to say that the charge was not erroneous for the reason assigned.

7. On the trial Mrs. Austin, in reference to the purchase of the land, testified as follows: "I gave Mr. Stewart a house and lot and $300. There was a mortgage on the place when I bought it. I have never finished paying the mortgage off. Henry C. Austin never put a nickel into the property. . . I told Mr. Green [plaintiff's attorney] at that time [when the obligation was executed] that my husband did not have a nickel in the property. I told him why I had to borrow this money. When I bought the place it was mortgaged, and I could not raise the money, and then I had to get the money somewhere else. . . I negotiated the trade with Stewart. Mr. H. C. Austin had no part in the negotiation of that trade. I was present when Mr. Stewart executed that deed to Mr. Austin and myself. . . The $300 was my debt. Mr. Stewart just asked me, he said, 'You are a married woman; wouldn't it be better for Mr. Austin to sign this note, to make me sure of my money?' The deed was made the same way." H. C. Austin testified: "I never paid anything on the 75 acres of land involved in this suit. Mrs. Austin, my wife, bought the property, and was paying on it. She still owes a balance of $700 with interest on it. . . I never put a nickel of money into this land. I never worked it until this year, or last year. . . In regard to deed . . from Stewart and his wife to myself and Mrs. Sallie E. Austin, will say I never claimed any interest or title under that deed to this property, none whatever. I have never been in possession of that property. I have never exercised any acts of ownership over it, none at all. I have never made any improvements, or spent any of my money on it. As to why I took the title to this land, instead of the deed being made to my wife alone — there was a mortgage on the place; she owed Stewart $300; and Stewart wanted me to do it; he wanted to be secure on these notes. I was sheriff at the time, and he wanted to get the money. As to whether he looked to me for the purchase-money of the land,— he wanted to. I reckon I agreed to it; I don't remember. As to the balance of the purchase-money, of course, he looked to me and her too. Mrs. Austin paid the $300; I never paid a nickel." The deed to the 75 acres of land was made by Stewart

and his wife to H. C. Austin and Mrs. Sallie E. Austin after the plaintiff had obtained a judgment against H. C. Austin, upon which judgment the execution referred to in the bond sued on had been issued.　　It clearly appears from the testimony that Stewart was unwilling to make the deed to Mrs. Austin alone, but insisted that it should be made to her and her husband, and that he required that H. C. Austin should sign the notes, with his wife, for the balance of the purchase-money of the land, and that Stewart looked to him as well as his wife for the payment of this money. It does not appear in what capacity H. C. Austin signed these notes.　　When the deed was executed, the title to an undivided half interest in the land was put in H. C. Austin, and the land, prima facie, became at once subject to the plaintiff's judgment against him, to the extent of this interest.　　In order to relieve the undivided half interest in the land, which H. C. Austin appeared to have under the deed, from the apparent lien of the plaintiff's judgment, it would have been necessary to prove that he really had no interest in the land.

It is doubtful if the facts that Mrs. Austin negotiated the trade for the purchase of the land with Stewart, that she paid all the purchase-money that had been paid, and that H. C. Austin had never claimed any interest in the land were sufficient proof that he had no interest therein; especially when it seems probable from the testimony that Stewart refused to sell the land to Mrs. Austin alone, but insisted upon selling it to her and her husband. Be this as it may, H. C. Austin apparently had a half interest in the land, subject to the plaintiff's execution; and when Mrs. Austin desired and attempted to obtain a loan on the land, she was met with a refusal, unless this apparent lien of the plaintiff should be released.　　There was evidence that both Austin and his wife endeavored to induce the plaintiff to relinquish its apparent right to subject the land to its judgment; that the plaintiff at first declined to do so, but finally consented, provided Mrs. Austin would enter into the obligation sued on to pay the amounts due on the execution against her husband.　　While Mrs. Austin, before she executed the obligation in question, told the attorney for the plaintiff that her husband had no interest in the land, it does not appear that the attorney accepted this statement as being true, or in any way conceded that the plaintiff's judgment had no

lien on the land. This statement, made while she was endeavoring to get the plaintiff to release its apparent lien on the land, may have induced the plaintiff to do so provided Mrs. Austin would execute the obligation sued on, the plaintiff apprehending litigation with her if it undertook to enforce its judgment by a levy upon the undivided half interest in the land, and preferring to settle the matter in this way, rather than to take the chances of a contest in a claim case with Mrs. Austin. Mrs. Austin, after executing the obligation involved in this case, and thereby obtaining a release of the plaintiff's apparent lien on an undivided half interest in the land and its right to endeavor to subject such interest to its execution, and after her husband had executed a deed to her purporting to convey this interest, obtained the loan on the land which she desired, by conveying the whole interest in the land to the lender as security therefor. Under these circumstances, we think it manifest that, by the execution of the obligation sued on she obtained a benefit, which was a sufficient consideration for the contract, whether her husband really owned any interest in the land or not. The land was relieved of an apparently valid lien, and she was thereby enabled to accomplish her desire of obtaining a loan thereon. Moreover, the plaintiff was deprived of its clear right to insist upon its judgment being a lien on the land and endeavoring to subject it thereto. It is true that, in undertaking to pay the execution, Mrs. Austin was, in a sense, agreeing to pay her husband's debt, but she was also undertaking to relieve what she contended was her land alone from an incumbrance which the plaintiff claimed, and apparently had, upon it; and this was the real consideration moving her to execute the obligation, and was sufficient to bind her to its performance. In contracting to discharge the apparent incumbrance upon the land which she claimed belonged to her exclusively, she made the amount of such incumbrance her own debt. See *Lowenstein* v. *Meyer*, 114 *Ga.* 709, and cases cited. We therefore conclude that, under the evidence submitted, the verdict should have been in favor of the plaintiff, that the verdict for the defendant was without evidence to support it, and that the court, for this reason, erred in not granting a new trial.

*Judgment reversed.     All the Justices concur.*